911 P.2d 104

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Steven CANADY, Defendant–Appellant.**

**No. 16635.**

Intermediate Court of Appeals of Hawai'i.

Feb. 8, 1996.

---

Susan Lynn Arnett, Deputy Public Defender, on the briefs, Honolulu, for defendant-appellant.

Diane A. Noda, Deputy Prosecuting Attorney, County of Hawai'i, on the brief, Hilo, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant–Appellant Steven Canady (Defendant) was convicted of Abuse of [a] Family and Household Member in violation of Hawai'i Revised Statutes (HRS) § 709–906(1) (1993) [1] on November 6, 1992. He was sentenced on December 17, 1992 and the Judgment was entered on December 21, 1992. We vacate the Judgment and remand for a new trial.

## I.

A July 13, 1992 Complaint alleged that Defendant committed the offense by "striking" the complaining witness (Complainant) "in the face and head area[.]" Defendant was tried in a jury-waived trial before a family court judge on October 19, 1992 and November 6, 1992. The State of Hawai'i (the State) called Officer Harold D. Pinnow (Officer Pinnow), who testified that he went to the Tiki Garden Subdivision on the island of Hawai'i in response to a domestic argument call. There, he found Complainant and noted that she "had been injured[ ] [with] [m]ost of ... the injury ... to [Complainant's] fac[ial]

---

1. Hawai'i Revised Statutes (HRS) § 709–906(1) (1993) provides in pertinent part:

 **§ 709–906 Abuse of family and household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member, or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member may, upon request, transport the abused person to a hospital or safe shelter.

 For the purposes of this section, "family or household member" means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

area[.]" Officer Pinnow did not see how Complainant came to be injured. Officer John Pagay (Officer Pagay), who responded to the same call, observed that Complainant's "face was covered with blood[,]" and called the ambulance that took Complainant to Hilo Hospital. Officer Pagay took two photographs of Complainant's injuries. The photographs were admitted into evidence over Defendant's objections, but their receipt is not challenged on appeal.

Officer Marshall Kanehailua (Officer Kanehailua) proceeded to the hospital to continue the investigation. Over Defendant's objections, Officer Kanehailua stated that Complainant initially spoke to him, then stopped because she was afraid that if Defendant saw her talking to him, "[Defendant] would come in and beat her up." This testimony was as follows:

Q. [ (THE PROSECUTOR) ] Did [Complainant] want to speak with you?

A. At the—

Q. At the emergency room.

A. Yes and no.

Q. Okay. Why would you say that?

A. At first, she begin [sic] to speak to me. Then she stopped stating—

[DEFENSE COUNSEL]: Objection. Objection. Move to strike.

THE COURT: On what grounds?

[DEFENSE COUNSEL]: Hearsay, your Honor.

THE COURT: [The Prosecutor].

[THE PROSECUTOR]: This would be onto [sic] her emotional or mental state at the time which would be [sic] exception to hearsay at the present time when she was speaking to the officer in the emergency room, her state of mind.

THE COURT: We'll go ahead and overrule the objection.

[THE PROSECUTOR] Q: Okay. Officer, you had started to say she

started to talk to you at first but then—

A. Yes.

Q. She didn't want to?

A. She didn't want to because the responsible party in this case, her boyfriend, was outside. And she feared if he had seen her talking to me, he would come in and beat her up.

Q. Did you see anyone outside at that time?

A. No.[2]

(Footnote added.)

Officer Kanehailua then presented a form known as the "Hawaii [Hawai'i] County Police Department Domestic Violence Case/Victim's Statement" (the Statement) to Complainant to complete. According to Officer Kanehailua, "[Complainant] said she did not want to write it out. She was going to give it to me verbally, and I fill [sic] out the sheet for her." Officer Kanehailua testified he assisted Complainant in filling out the Statement by writing down her verbal responses to the questions on the Statement. He then signed the Statement as a witness and had Complainant sign the bottom of the Statement. Complainant was not present on October 19, 1992, the first day of trial, to provide foundational testimony about the Statement because the State's attempts to notify her of the trial had been unsuccessful. Thus, only Officer Kanehailua's testimony supported the Statement's receipt into evidence.

Defendant objected to the Statement as inadmissible hearsay. The family court overruled the objection and admitted the form into evidence under Hawai'i Rules of Evidence (HRE) Rule 803(b)(8), the public records and reports exception to the hearsay rule.

The Statement contains a series of questions relating to the circumstances surrounding the injury, including one requesting the identity of the person inflicting the injury. The Statement requires the injured person to respond by circling an appropriate answer

2. Officer Marshall Kanehailua testified that he later found Defendant across the street from the hospital.

and by providing a written narrative in the spaces provided. The first question stated, "What is your relationship to the person who struck you?" In response, the word "friend" was circled. The question then queried, "Are you living together? yes/no. If yes, how long?" In response, "no" was crossed out and "yes" from the "If yes, how long" portion was circled and what appears to be either a "12" or "13" followed by "yrs." was written in the applicable space. The second question requested the name and address of the person that caused the injury. A name was not given, but the letter "P[,]" indecipherable marks, and the address "1845 Pahoa" were provided. Defendant's opening brief acknowledges that the response to this question was "an apparent notation 'POB' and an address." Complainant would later testify that only she and Defendant lived at that address. Thus, although Defendant was not specifically named in the Statement, the responses therein pointed to Defendant as the person who caused Complainant's injuries.[3]

After speaking with Complainant, Officer Kanehailua located Defendant outside the hospital. The officer then notified Defendant that Defendant would be arrested for abuse of a family and household member. Officer Kanehailua reported that Defendant indicated, "He wanted to go back into the emergency room and see her one last time to apologize." This statement was offered in evidence as an admission by Defendant over Defendant's objection, but its offer is not challenged on appeal.

The trial was continued until November 6, 1992 to allow the State additional time to obtain Complainant's appearance for trial. On November 6, 1992, Complainant was present and testified that Defendant was her boyfriend. Complainant also related that her home address was "P.O. Box 1845, Pahoa." Her home was located in Fern Acres on Plumeria Street and she had lived there with Defendant for fourteen years.

Complainant testified that on July 11, 1992, she was waiting in a car for Defendant while he was inside a house visiting his friends. The car was parked in the driveway of the house. Complainant lay down on the front seat of the car. She did not remember what happened next, but when she awoke, her head was bleeding. Screaming, "Help me, please help me[,]" she exited the car and ran across the street. The next thing Complainant remembered was being in the hospital. She could not recall whether a police officer spoke to or questioned her while at the hospital.[4] When presented with the Statement, Complainant identified the signature on the bottom of the form as her signature. When asked if she remembered "whether or not a policeman asked [her] questions when [she was] at Hilo Hospital[,]" she answered, "No."

After Complainant's testimony, the State rested.

Defendant did not testify, and the defense did not call any witnesses.

After each side concluded their closing arguments, the court found Defendant guilty of Abuse of Family and Household Member in violation of HRS § 706–609(1). In finding Defendant guilty, the court referred to Officer Kanehailua's testimony and relied heavily on the Statement. The court stated:

> After reviewing all the evidence, and as counsel has aptly pointed out, the critical piece [sic] of evidence are the police officers' testimonies, *and most importantly the domestic violence statement taken by Officer Kanehailua.* The [c]ourt concludes that each and every element of the charge has been met beyond a reasonable doubt.
>
> I would like for clarification purposes to explain that it's true the critical area of

---

3. The form also elicited information on what was used to strike Complainant. The answer stated, "car/slam her on the car." The form then requested a description of "what led to this incident" and "what happened?" The legible portions of the response stated, "Drinking with friends. He got mad over money and struck her over her head" and "also shoved her on a vehicle."

4. In explaining her memory failure, Complainant testified during cross-examination and redirect examination, that she suffered from seizures, had been hurt in the past because of a seizure, and after a seizure she could not recall anything that had happened.

inquiry was whether or not [Defendant] indeed inflicted the physical abuse on ... [Complainant]. The [c]ourt has extrapolated from the testimony of Officer Kanehailua as well as the identification by [Complainant] of her signature on this document that this Defendant indeed inflicted the injuries noted or depicted in the pictures.

(Emphasis added.)

The court then proceeded through the questions on the Statement, noting that Complainant responded that it was a "friend" that struck her, that she had lived with this person for "13 years" and that she gave her post office box number in response to the request for the name and address of the person that struck her. The court rested its decision on the responses on the Statement and Complainant's fear of Defendant:

It's very clear to me that [Complainant] at the time of this investigation assisted in the completion of this form. Her testimony today is that that is her signature at the bottom of the form. The testimony today is that she cannot remember who she spoke with and whether she spoke with a police officer, however, she has not denied that the statement given here are [sic] as offered. And the [c]ourt is convinced again that the information read by [Complainant] at this time—at the time of this inquiry, which is July 11th, date of alleged offense—rather, the date of the offense, was accurate.

As to her statement to Officer Kanehailua that she did not wish to make a statement because of her fear, in the [c]ourt's mind that fear was demonstrated here in the courtroom by way of her testimony.

On appeal, Defendant contends that the trial court erred when it admitted, over his objection, (1) Officer Kanehailua's testimony that Complainant did not want to speak to him because she feared Defendant, "the responsible party[,]" would "beat her up[,]" under HRE Rule 803(b)(3), the state of mind

exception to the hearsay rule, and (2) the Statement under HRE Rule 803(b)(8), the "public records" exception to the hearsay rule.

The State maintains the court properly admitted the police officer's testimony under HRE Rule 803(b)(3). It concedes, however, that the court erred in allowing the Statement into evidence as a public record under HRE Rule 803(b)(8). The State, nonetheless, argues that the document was still admissible under HRE Rule 613(b),[5] as extrinsic evidence of a prior inconsistent statement of a witness, and under HRE Rule 802.1(1), "which requires that the witness be subject to cross-examination concerning the subject matter of the statement" because there were sufficient facts in various places in the record which, if taken together, would make the Statement admissible. Finally, the State contends that the errors, if any, were harmless in light of the other evidence at trial.

In response, Defendant maintains that the foundational requirements of HRE Rule 802.1(1) were not met and assuming, *arguendo*, that the Statement was admissible, its admission violated Defendant's right to confrontation under the United States and Hawai'i Constitutions.

## II.

We first determine whether, excluding the evidence Defendant challenges on appeal, there was "other evidence" to convict Defendant of abusing a household member.

 In pertinent part, HRS § 709–906 states that it is a crime for "any person ... to physically abuse a ... household member[.]" This court has held that to "physically abuse" someone is to "maltreat in such a manner as to cause injury, hurt or damage to that person's body." *State v. Nomura*, 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App.), *cert. denied*, 80 Hawai'i 187, 907 P.2d 773 (1995); *State v. Ornellas*, 79 Hawai'i 418, 421, 903 P.2d 723, 726 (App.), *cert. denied*, 80

---

**5.** Hawai'i Rules of Evidence (HRE) Rule 613(b) provides:

(b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not

admissible unless, on direct or cross-examination, (1) the circumstances of the statement have been brought to the attention of the witness, and (2) the witness has been asked whether the witness made the statement.

Hawai'i 187, 907 P.2d 773 (1995). HRS § 709–906 does not designate the requisite state of mind attendant to the offense of physical abuse of a household member. Thus, "that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702–204 (1985). *Cf. State v. Holbron*, 78 Hawai'i 422, 424, 895 P.2d 173, 176 (1995) (requisite state of mind under HRS § 134–7(b) (Supp.1992) unspecified, thus, it is intentionally, knowingly, or recklessly), *reconsideration denied*, 79 Hawai'i 424, 903 P.2d 729 (1995).

■ The State contends the following six factors of "other evidence" established that Defendant abused Complainant:

[1.] Officer Pinnow testified that he responded to a domestic argument.

[2.] All three police officers testified that they observed physical injuries to [Complainant's] face and head area.

[3.] The photographs of [Complainant] that were admitted into evidence also verify the injuries.

[4.] While at the Emergency Room, [Complainant] told Officer Kanehailua that her boyfriend was the person responsible for her injuries, and she was afraid he would come in and beat her up if he saw her talking to the officer.

[5.] Her statement held true when Officer Kanehailua found Defendant outside the Emergency Room.

[6.] Defendant at that time stated that he wanted to go into the Emergency Room to see his girlfriend to apologize.

The first three factors only serve to demonstrate the undisputed fact that Complainant was injured. The fourth factor and the reference to its truthfulness in the fifth factor constitute evidence which Defendant attacks on appeal. Otherwise, the fifth and sixth factors indicate that Defendant was at the

hospital, which is consistent with his relationship with Complainant.

■ Apparently, the crux of the State's argument is the sixth factor—that Defendant's apology was offered as an admission by a party-opponent under HRE Rule 803(a)(1).[6] However, we believe the apology on its face did not constitute an admission that Defendant committed the alleged crime. We agree that " 'extrajudicial statements of a party-opponent, when offered against the same, are universally deemed admissible at trial as substantive evidence of the fact or facts stated.' " *Shea v. City & County of Honolulu*, 67 Haw. 499, 507, 692 P.2d 1158, 1165 (1985) (quoting *Kekua v. Kaiser Found. Hosp.*, 61 Haw. 208, 217, 601 P.2d 364, 371 (1979)). But it is not evident, in the instant case, that the apology was an admission to a criminal act. At trial, the State claimed "the relevancy [of the apology] is [that] if you did something to someone, you felt badly or you felt it was wrong, you want to apologize for it." On the other hand, no reason is given as to why Defendant wanted to apologize. The apology statement is thus bereft of the "fact or facts stated" which would tie the apology to the violative conduct. Because Defendant did not indicate what his apology was for, his "apology" could relate to any number of circumstances. Hence, the meaning of Defendant's statement is open to speculation. Given its ambiguous nature, the apology, along with the unchallenged evidence, would not amount to substantial evidence supporting the conviction.

Therefore, we hold that, the undisputed "other evidence" the State listed was insufficient to establish that Defendant abused Complainant in violation of HRS § 709–906.

### III.

We believe the trial court conscientiously sought to apply evidentiary rules to the evi-

---

**6.** HRE Rule 803(a)(1) states:

> **Rule 803 Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> (a) Admissions.
> (1) Admission by party-opponent. A statement that is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity,

or (B) a statement of which the party has manifested the party's adoption or belief in its truth.

The court did not consider the statement an admission. Instead, the court indicated that the statement was admissible, "based on the chronology of [Officer Kanehailua's] testimony[,] . . . more in the way of excited utterance or first utterance."

dence as it came in at the trial. But the undisputed "other evidence" was insufficient to convict Defendant. We next consider whether the court erred in receiving the challenged evidence. We begin with Officer Kanehailua's testimony regarding Complainant's fear of Defendant.

### A.

Officer Kanehailua related that Complainant did not want to speak to him "because the responsible party in this case, her boyfriend, was outside. And she feared if [Defendant] had seen her talking to [the officer], he would come in and beat her up." Responding to Defendant's hearsay objection, the State countered, and the court agreed, that the statement was exempt from the hearsay rule because it was offered to prove Complainant's state of mind at the time she spoke to the officer in the emergency room.

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801(3). "Hearsay is inadmissible at trial, unless it qualifies as an exception to the rule against hearsay." *State v. Ortiz*, 74 Haw. 343, 357, 845 P.2d 547, 554, *reconsideration denied*, 74 Haw. 650, 849 P.2d 81 (1993) (citations, quotation marks and brackets omitted). HRE Rule 803(b)(3) sets forth the state of mind exception to the hearsay rule:

(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), *but not including a statement of* memory or *belief to prove the fact* remembered or *believed* unless it relates to the execution, revocation, identification, or terms of declarant's will.

HRE Rule 803(b)(3) (emphases added). The State submits that Complainant's statement was an "express[ion] [of] her fear and the *reason for her fear.*" (Emphasis added.)

■ At the outset, we point out that "[t]he state of mind exception, by definition, focuses on the sensory impressions of the

declarant where *those impressions are relevant to an issue in the case.*" *State v. Feliciano*, 2 Haw.App. 633, 636, 638 P.2d 866, 869 (1982) (emphasis added). *See State v. O'Daniel*, 62 Haw. 518, 525, 616 P.2d 1383, 1389 (1980) (decided prior to the effective date of the HRE). Thus, "[o]rdinarily, if the victim's state of mind is not in issue, evidence of fear or other emotions is not relevant." *State v. Flett*, 40 Wash.App. 277, 699 P.2d 774, 781 (1985) (witness's state of mind was relevant to show lack of consent to rape). *Cf. United States v. DeCarlo*, 458 F.2d 358 (3d Cir.) (statement which establishes the witness's fear of the defendant is admissible because fear is an element of extortion), *cert. denied*, 409 U.S. 843, 93 S.Ct. 107, 112, 34 L.Ed.2d 83 (1972); *United States v. Hyde*, 448 F.2d 815 (5th Cir.1971), *cert. denied*, 404 U.S. 1058, 92 S.Ct. 736, 737, 30 L.Ed.2d 745 (1972). Complainant's fear was not relevant to any of the elements of the alleged crime. As Defendant was charged, the elements of Abuse of Family and Household Member, were: (1) Defendant (2) intentionally, knowingly, or recklessly, (3) physically abused, i.e. maltreated or injured, hurt or damaged, (4) a family or household member. None of these elements necessitated proof of Complainant's state of mind.

Nor was Complainant's state of mind relevant to any issue raised during the trial. Defendant's defense at trial was that the evidence was insufficient to convict. A defense, such as self-defense (if applicable), which might draw Complainant's state of mind into question was not raised.

■ Moreover, even if evidence of fear was relevant to an issue, "[a] victim's out-of-court expression of fear may be used to show his or her state of mind but not to prove the underlying facts upon which the fear is based. Those underlying facts must be established by other, nonhearsay evidence." *State v. Rosencrantz*, 110 Idaho 124, 714 P.2d 93, 97 (1986). HRE Rule 803(b)(3) is identical to Federal Rules of Evidence (FRE) Rule 803(3). Commentary to HRE Rule 803 (1993). Under FRE Rule 803(3),

[t]he exclusion of "statements of memory or belief to prove the fact remembered or believed" is necessary to avoid the virtual

destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.

FRE Rule 803(3) advisory committee's note, *reprinted in* M. Graham, *Federal Practice and Procedure: Evidence* § 6753, at 577 (interim ed. 1992). The same rationale would apply to HRE Rule 803(b)(3).

The statement that "she feared if he [ ('the responsible party') ] had seen her talking to [Officer Kanehailua], he would come in and beat her up" would allow the inference that an assault by Defendant produced Complainant's fear. In other words, the only inference related to the elements and issues in this case that can be drawn from Complainant's statement is that she was afraid of Defendant because he had caused her injuries. HRE Rule 803(b)(3), however, requires such inferences be excluded from consideration as evidence that the event which produced the state of mind actually occurred. *See State v. Gallegos,* 92 N.M. 370, 588 P.2d 1045, 1054–55 (not error to exclude the hearsay testimony of a complaining witness who said, upon seeing a person walk by, " 'Isn't that the guy that stabbed me?' " as a statement of belief), *cert. denied,* 92 N.M. 353, 588 P.2d 554 (1978).

Finally, while "the most likely inference that . . . may [be] draw[n] from the existence of fear, and often the only logical inference that could be drawn, is that some conduct of the defendant . . . occurred to cause the fear[,]" "[t]he possibility of overpersuasion, the prejudicial character of the evidence, and the relative weakness and speculative nature of the inference, all argue against admissibility as a matter of relevance." 2 J. Strong, *McCormick on Evidence* § 276, at 244 (4th ed. 1992). *See People v. Huber,* 131 Ill. App.3d 163, 86 Ill.Dec. 385, 388, 475 N.E.2d 599, 602 ("statement regarding the decedent's fear of the defendant served no purpose other than to permit the inference that the defendant was guilty of that murder[,]"

and, therefore, the statement was improperly admitted), *appeal denied* (1985).

We would normally presume that the court would not consider evidence of Complainant's fear to establish Defendant's identity. *See State v. Antone,* 62 Haw. 346, 355, 615 P.2d 101, 108 (1980) (a judge is presumed to rely only on competent evidence); *Sabol v. Sabol,* 2 Haw.App. 24, 30, 624 P.2d 1378, 1383 (1981) (in a divorce case, trial judge could restrict consideration of evidence to specific issue and not consider it for other issues for which the evidence would be potentially prejudicial); *State v. Nieves,* 1 Haw.App. 586, 588–89, 623 P.2d 100, 102 (1981); *State v. Gutierrez,* 1 Haw.App. 268, 270, 618 P.2d 315, 317 (1980) (per curiam). Here, however, the trial court, while scrupulous in its review of the evidence, did apparently consider Complainant's fear of Defendant as a factor in establishing his identity as the perpetrator of the crime. To allow a statement into evidence for the truth of the matter asserted because the statement also establishes the declarant's state of mind runs contrary to the purpose of the hearsay rule. *See Hopkinson v. State,* 632 P.2d 79, 130 (Wyo.1981) ("[a] party may not merely have hearsay admitted under [the state of mind exception] in order to circumvent the [hearsay] rule"), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). Accordingly, it was error to admit the hearsay statement of Complainant to aid in proving Defendant was "the responsible party" under the guise of a state of mind exception to the hearsay rule.

### B.

Finally, we consider the admissibility of the Statement in evidence as a prior inconsistent statement. Based on the record before us, the Statement would not be admissible because we believe the record failed to establish that Complainant was "subject to cross-examination concerning the subject matter" of the Statement ·as required under HRE Rule 802.1(1).[7] Since we remand the case and the Statement may be the subject of

---

7. Finding HRE Rule 802.1 dispositive on this issue, we do not reach Defendant's right to con-

frontation claim.

further contention, we discuss the basis for our conclusion.

HRE Rule 802.1(1)(B) states in relevant part:

> The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
>
> (1) Inconsistent statement. *The declarant is subject to cross-examination concerning the subject matter of the declarant's statement*, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with rule 613(b), and the statement was:
>
> . . . .
>
> (B) Reduced to writing and signed or otherwise adopted or approved by the declarant[.]

(Emphasis added.)

Defendant argues that Complainant's failure to recall her conversation with Officer Kanehailua at the hospital's emergency room prevented her from being "subject to cross-examination concerning the subject matter of [Complainant's prior] statement" as required by HRE Rule 802.1(1).

In *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the United States Supreme Court considered the application of FRE Rule 801(d)(1)(C). That rule provided in pertinent part:

> A statement is not hearsay if—
>
> (1) **Prior statement by witness.** *The declarant* testifies at trial or hearing and *is subject to cross-examination concerning the statement*, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or . . . (C) one of identification of a person made after perceiving the person[.]

FRE Rule 801(d)(1) (emphases added). In *Owens*, John Foster, a prison counselor, was attacked with a metal pipe, and suffered a skull fracture. While in the hospital, Foster identified his attacker to an investigator. At trial, Foster indicated that while in the hospital, he remembered identifying the person who attacked him but, under cross-examination, admitted that he could not remember who assaulted him nor remember anyone who visited him at the hospital other than the investigator. *Id.* at 556, 108 S.Ct. at 840–41. The prior identification was challenged as inadmissible hearsay on the basis that Foster's failure to remember his prior identification prevented him from being "subject to cross-examination concerning the [prior identification]" as required under FRE Rule 801(d)(1)(C). Disagreeing, the Court held that the rule was not "violated by admission of [a] [prior] identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification." *Id.* at 564, 108 S.Ct. at 845. The Court reasoned that, under a "natural reading" of the phrase " 'subject to cross-examination concerning the statement' " in FRE Rule 801(d)(1), all that is required is that the witness "is placed on the stand, under oath, and responds willingly to questions[,]" even if the witness was unable to testify about any of the events set forth in the prior statement. *Id.* at 561, 108 S.Ct. at 844. Under its reading, the Court found that FRE Rule 801(d)(1)(C)'s language "does not[,] on its face[,] require more." *Id.* at 562, 108 S.Ct. at 844.[8] *See* Michael H. Graham, *The Forgetful Witness*, 60 U.Chi.L.Rev. 167, 186 (1993).[9]

---

8. Justice Brennan, in his dissenting opinion, argued that the right to confrontation requires that the witness be subject to "effective" cross-examination. *United States v. Owens*, 484 U.S. 554, 567, 108 S.Ct. 838, 846–47, 98 L.Ed.2d 951 (1988) (Brennan, J., dissenting). "Effective" cross-examination, in turn, requires that the "cross examination affords 'the trier of fact . . . a satisfactory basis for evaluating the truth of the prior statement.' " *Id.* at 568, 108 S.Ct. at 847 (quoting *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970)). To achieve this, Federal Rules of Evidence (FRE) Rule 801(d)(1) must require that the witness "be subject to cross-examination as to the subject matter of the prior statement." *Id.* at 571 n. 2, 108 S.Ct. at 849 n. 2.

9. This law review article criticizes the decision in *Owens*, 484 U.S. 554, 108 S.Ct. at 839–40, for rendering the phrase "subject to cross-examination" in FRE Rule 801(d)(1) "close to being surplusage[.]" Michael H. Graham, *The Forgetful Witness*, 60 U.Chi.L.Rev. 167, 186 (1993). The author contends that the phrase should have been interpreted to require that the witness have

In support of its holding, the *Owens* Court compared the language of FRE Rule 801(d)(1) to FRE Rule 804(a)(3) [10] which defined an unavailable witness as a person who " 'testifies to a *lack of memory of the subject matter* of the declarant's statement.' " *Owens*, 484 U.S. at 562, 108 S.Ct. at 844 (quoting FRE Rule 804(a)(3)) (emphasis added). *Id.* The Court focused on the difference between the words "subject to cross-examination concerning the statement" in FRE Rule 801(d)(1) and "lack of memory of the subject matter of the defendant's statement" in FRE Rule 804(a)(3). This difference was seen as indicating that "Congress plainly was aware of the recurrent evidentiary problem at issue . . .—witness forgetfulness of an underlying event—but chose not to make [witness forgetfulness] an exception to [the admissibility

of an out-of-court identification under] [FRE] Rule 801(d)(1)(C)." [11] *Id.*

Our parallel rule, HRE Rule 802.1(1), in contrast to FRE Rule 801(d)(1), requires that the "declarant [be] subject to cross-examination concerning *the subject matter* of the declarant's statement[.]" (Emphasis added.) The scope of this requirement has not yet been addressed in this jurisdiction.[12] We are not aware of any other jurisdiction which has a similarly worded rule. There is no legislative history concerning the rule.

Unlike the contrasting language of FRE Rules 801(d)(1)(C) and 804(a)(3) that the *Owens* Court relied on, the "inconsistent statement" provision of HRE Rule 802.1(1) and the "lack of memory" provision of HRE Rule 804(a)(3) are not significantly distinguishable. HRE Rule 804(a)(3) [13] employs

a memory of making the statement. *Id.* at 187. However, the article suggests the result in *Owens* could have been avoided if the drafters had used the phrase "subject to cross-examination concerning *the subject matter* of the statement[,]" which "would have more clearly expressed an intent to exclude statements describing underlying events the witness has now forgotten[.]" *Id.* at 186. This is precisely the language used in our parallel rule, HRE Rule 801(d)(1)(C).

10. Professor Graham explains as follows:
[FRE] Rule 804(a)(3) provides that a witness who testifies to a lack of memory of the subject matter of his [or her] statement is unavailable. A witness may either truly lack recollection or for a variety of reasons, including concern of a possible perjury prosecution, feign lack of recollection. In either event, the witness is unavailable to the extent that he [or she] asserts lack of recollection of the subject matter of the prior statement, even if the witness recalls other events.
M. Graham, *Federal Practice and Procedure: Evidence* § 6792, at 764 (interim ed. 1992) (M. Graham). Further, the Advisory Committee's Note on FRE Rule 804(a)(3) notes that if a witness's claimed lack of memory is successful,
the practical effect is to put the testimony beyond reach, as in the other instances. In this instance, however, it will be noted that the lack of memory must be established by the testimony of the witness himself [or herself], which clearly contemplates his [or her] production and subjection to cross-examination.
FRE Rule 804 advisory committee's note *reprinted in* M. Graham, at 757.

11. Upon reviewing the Advisory Committee's Notes on FRE Rule 801 and its legislative history, the *Owens* Court explained that, Congress's rationale for not making "witness forgetfulness"

an exception to FRE Rule 801(d)(1)(C) was to foster out-of-court identifications, which, despite being hearsay, were preferable to courtroom identifications. *Owens*, 484 U.S. at 562, 108 S.Ct. at 844.

The premise for Rule 801(d)(1)(C) was that, given adequate safeguards against suggestiveness, out-of-court identifications were generally preferable to courtroom identifications.... [S]ince, as time goes by, a witness'[s] memory will fade and his [or her] identification will become less reliable, minimizing the barriers to admission of more contemporaneous identification is fairer to defendants and prevents cases falling through because the witness can no longer recall the identity of the person he [or she] saw commit the crime.
*Id.* (brackets, quotation marks, and citations omitted) (some brackets added).

12. In *State v. Ildefonso*, 72 Haw. 573, 581, 827 P.2d 648, 653 (1992), the supreme court found that the requirements of HRE Rule 802.1(3) were satisfied because the witness "testified at trial regarding the circumstances of his prior identification, *vouched for its accuracy*, and was available for cross-examination by defendant." (Emphasis added.) The precise issue before us was not considered in *Ildefonso*.

13. HRE Rule 804 provides:
**Rule 804 Hearsay exceptions; declarant unavailable.** (a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant:
. . . .
(3) Testifies to a lack of memory of the subject matter of the declarant's statement;
. . . .

the same "subject matter" language as HRE Rule 802.1(1), stating that a witness is unavailable if the witness "[t]estifies to a lack of memory of *the subject matter* of the declarant's statement[.]" HRE Rule 804(a)(3) (emphasis added).

■ Although the commentary to HRE Rule 802.1 is not evidence of legislative intent, it is "an aid in understanding" the rule. HRE Rule 102.1. The commentary to HRE Rule 802.1 explains that under the common law, prior inconsistent statements were considered hearsay and could only be used to impeach a witness. Commentary to HRE Rule 802.1 (1993). The FRE modified the common-law rule and allowed prior inconsistent statements to be used as substantive proof of the matters asserted in the statement, if the statement was " 'given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition[.]' " *Id.* (quoting FRE Rule 801(d)(1)(A)). HRE Rule 802.1 adopted this federal exception to the common law, and went further by adding two more exceptions to the hearsay objection for signed or adopted statements and recorded statements. *Id.* These exceptions were justified if the statements' trustworthiness was assured on two grounds: (1) the statements could "fairly be attributed" to the witness; and (2) the witnesses themselves were "subject to cross examination concerning the subject matter of the statement." *Id.*

The situation envisioned is one where the witness has testified about an event and his [or her] prior written statement also describes that event but is inconsistent with his [or her] [present] testimony. Since the witness can be cross-examined about the event and the statement, the trier of fact is free to credit his [or her] present testimony or his [or her] prior statement in determining where the truth lies.

*Id.* Consequently, the rule was intended to exclude the prior statements of a witness who could no longer remember the underlying events described in the statement. *See id.* Absent the opportunity to cross-examine a witness about the material events described in a prior statement, the statement would lack one of the twin guarantees of trustworthiness supporting its admissibility as *substantive* evidence of the matters asserted in the statement.

Hence, unlike FRE Rule 801(d)(1), HRE Rule 802.1(1) requires more of the witness than just that he or she be "placed on the stand, under oath and respond[ ] willingly to questions." *Owens,* 484 U.S. at 561, 108 S.Ct. at 844. We hold that HRE Rule 802.1(1) requires, as a guarantee of the trustworthiness of a prior inconsistent statement, that the witness be subject to cross-examination about the subject matter of the prior statement, that is, that the witness be capable of testifying substantively about the event, allowing the trier of fact to meaningfully compare the prior version of the event

A declarant is not unavailable as a witness if the declarant's exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of the declarant's statement for the purpose of preventing the witness from attending or testifying....

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former testimony....;

(2) Statement under belief of impending death....;

(3) Statement against interest....;

(4) Statement of personal or family history....;

(5) Statement of recent perception....;

(6) Statement by child....;

(7) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

with the version recounted at trial[14] before the statement would be admissible as substantive evidence of the matters stated therein.

Here, the subject matter of the Statement referred to the identity of Complainant's assailant and how Complainant sustained her injuries. At trial, Complainant testified that she could not recall the events that she allegedly described in the Statement. She was, therefore, not able to testify about the substantive events reported in the Statement. Because the witness could not be "cross-examined about the event[s,]" the trier of fact was not "free to credit the present testimony or the prior statement" to determine "where the truth [lay]." Commentary to HRE Rule 802.1. Accordingly, under the present state of the record, the Statement was not admissible under HRE Rule 802.1(1) because Complainant could not be "subject[ed] to cross examination concerning the subject matter of the statement" as "envisioned" under the Rule.[15] *Id.*

## IV.

Based on the foregoing reasons, we vacate the court's December 21, 1992 Judgment and remand the case for a new trial.

---

**14.** According to Professor Bowman, inserting the words "subject matter" in HRE Rules 802.1(1) was

> a deliberate modification of the federal model ... [a]nd the Hawaii [Hawai'i] commentary confirms the intent to differ: "Since the witness can be cross-examined *about the event* and the statement, the trier of fact is free to credit his [or her] present testimony or his [or her] prior statement in determining where the truth lies."

A. Bowman, *Hawaii Rules of Evidence Manual* § 802.1–2, at 320 (1990) (quoting Commentary to HRE Rule 802.1 (1980) (emphasis added)).

**15.** Justice Brennan, in his dissenting opinion in *Owens*, 484 U.S. at 571, 108 S.Ct. at 848–49,

suggests that by demonstrating that partial or total loss of memory was motivated by bias or ulterior motive, a party might provide a satisfactory basis for evaluating the truth of a prior statement. In the event of a total loss of memory, Justice Brennan indicated that the catch-all exception to hearsay could apply. *Id.* (Brennan, J., dissenting). We have no occasion to reach such issues on the present state of the record.