STATE OF HAWAII, Plaintiff-Appellee,
v.
OLIVIER CARLUT, Defendant-Appellant.
No. 27530.
Intermediate Court of Appeals of Hawaii.
June 6, 2008.
On the briefs:
Hayden Aluli, for Defendant-Appellant.
Davelynn M. Tengan, Prosecuting Attorney, Brandon L.K. Paredes, Deputy Prosecuting Attorney, County of Maui, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, FUJISE and LEONARD, JJ.
Defendant-Appellant Olivier Carlut (Carlut) appeals from a Judgment of Conviction and Probation Sentence for the offense of Abuse of Family or Household Members in violation of Hawaii Revised Statutes (HRS) § 709-906, filed on September 2, 2005 by the Family Court of the Second Circuit (Family Court).[1] The incident arose on April 15, 2005, when officers responded to a call from Sandra Boggio (Boggio), who alleged Carlut had assaulted her at his home in Kihei, Maui. A jury found Carlut guilty and the Family Court sentenced Carlut to, inter alia, 48 hours in jail and a one-year term of probation.
Carlut raised the following points on appeal:

I. Alleged Pretrial Errors
A. The Family Court erred when it denied Carlut's motion to compel discovery of all of Boggio's prior inconsistent statements and any related notes, memoranda or reports that may have been in the possession of the prosecution.[2] Appellant specifically alleges error in the Family Court's failure to conduct an in camera review and failure to maintain copies of the notes, etc. for appellate review.
B. The Family Court erred when it denied Carlut's renewed motion to compel the above-referenced discovery.
C. The Family Court erred when it granted the State's motion to preclude the defense from calling the assigned prosecutor as a witness.
D. The Family Court erred when it denied Carlut's motion to dismiss with prejudice or to disqualify the prosecutor.

II. Alleged Trial Errors
A. The Family Court erred when it admitted Exhibit 2, the tape of the 911 call from Boggio.
B. The Family Court erred when it admitted Exhibit 1, Boggio's Voluntary Victim Statement (VVS).
C. The Family Court erred when it precluded examination of Boggio concerning her prior statements to the prosecutor, effectively denying Carlut his constitutional right to confront his accuser.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Carlut's points of error as follows:
Although identified as points of error, Carlut fails to articulate standards of review, grounds for relief, or argument in favor of reversal of the Family Court's pre-trial discovery rulings. We deem these points waived. See Hawai`i Rules of Appellate Procedure Rule 28(b)(7). Accordingly, we do not find that the trial court abused its discretion with respect to the above-referenced pre-trial rulings. Carlut's related objection, however, that he was denied his Sixth Amendment right to effectively cross-examine Boggio, is raised and argued in the context of his other points on appeal and will be considered accordingly.
The 911 Tape (Exhibit 2). Carlut's argument that the State failed to lay an adequate foundation under Hawaii Rules of Evidence (HRE) Rule 901 is without merit. We agree, however, with Carlut that the 911 tape was improperly admitted because Boggio's statements in the 911 recording are hearsay, and do not fall within the "excited utterance" exception in HRE 803(b)(2).[3]
To qualify as an excited utterance, HRE Rule 803(b)(2) requires the proponent of the statement to establish: (1) a startling event or condition occurred; (2) the statement was made while the declarant was under the stress of excitement caused by the event or condition; and (3) the statement relates to the startling event or condition. State v. Moore, 82 Hawai`i 202, 218-19, 921 P.2d 122, 138-39 (1996).
In his case, the State clearly established that "a startling event or condition occurred," that is, that Boggio was slapped by Carlut which caused swelling to the left side of her face. See State v. Machado, 109 Hawai`i 445, 127 P.3d 941 (2006). The statements made by Boggio to the 911 dispatcher related to the startling event, as she stated, "He beat me up, he almost broke my arm. He slapped me two times on the ear. He hits me on the head." Thus, the first and third requirements under HRE Rule 803(b)(2) are satisfied.
Our inquiry therefore focuses on "the second and most crucial requirement-whether the statement was made under the stress of excitement caused by the startling event or condition." Moore, 82 Hawaii at 219, 921 P.2d at 139. "In all cases, the ultimate question is whether the statement was the result of reflective thought or whether it was rather a spontaneous reaction to the exciting event." Id.
In this case, a number of events occurred before Boggio called the police: (1) she called her son after the incident occurred; (2) she waited in her car for her son to arrive at the house; (3) she relayed the incident to her son and asked him to speak with Carlut; (4) she continued to wait while her son spoke with Carlut; (5) she returned Carlut's wallet; (6) she waited while Carlut wrote her a check; and (7) then Boggio decided to call the police, at the urging of her son, because Carlut had not agreed to give her back a key so she could later retrieve her belongings. Even assuming Boggio was indeed upset at the time she called 911, given the limited nature of the injuries, the lapse of time between the incident and her recorded statements, and the fact that Boggio discussed the incident with her son before calling police, we find Boggio's statements in the 911 recording were the "result of reflective thought" rather than a spontaneous reaction to an exciting event. Accordingly, there was no excited utterance, and the Family Court erred in admitting Exhibit 2.
The VVS (Exhibit 1). Carlut also argues the Family Court erred in admitting the VVS into evidence under the prior inconsistent statement exception to the hearsay rule because Boggio's statements in the VVS did not meet the foundational requirements under HRE 802.1(1)(8)[4] and HRE 613. More specifically, Carlut argues that the statements within Exhibit 1 were not inconsistent with any of Boggio's testimony at trial, nor was she cross-examined on such statements, as required under HRE Rule 802.1(1). On appeal, the State concedes that the Family Court erred in admitting the VVS into evidence as a prior inconsistent statement under HRE Rule 802.1(1) because Boggio was not subject to cross-examination about the subject matter of certain statements within the VVS once she chose to invoke her 5th Amendment right against self-incrimination. The State, however, argues that any error by the Family Court in admitting Exhibit 1 under HRE Rule 802.1(1) is harmless because Boggio's statements in the VVS qualify as excited utterances under HRE Rule 803(b)(2). For the same reasons that the 911 tape was not an excited utterance, the VVS does not qualify as an excited utterance. The Family Court erred in admitting Exhibit 1.
Confrontation Clause Issues. Carlut asks this court to reverse his conviction based on violations of the Confrontation Clause of the Sixth Amendment of the United States Constitution and Article I, section 14 of the Hawaii Constitution, both of which provide that, in criminal proceedings, the accused shall enjoy the right to be confronted with the witnesses against him. Carlut argues, in part, that the admission of Exhibits 1 and 2 violated these constitutional rights. Carlut also argues that, had defense counsel been able to cross-examine Boggio on her statements to the prosecutor who was trying the case, he could have established that Boggio admitted that she provided false statements to the police. Although not specifically raised by Carlut, we note that, by asserting her Fifth Amendment rights on certain subjects related to the VVS, Boggio effectively made herself "unavailable" to testify on those subjects at trial, in particular on the issue of whether she gave false statements. See Padilla v. Terhune, 309 F.3d 614, 618 (9th Cir. 2002) (assertion of Fifth Amendment privilege makes a witness legally unavailable). This purportedly left Carlut with no opportunity to "confront" Boggio about whether her statements to police were true.
Even assuming that the Family Court erred in limiting or effectively precluding the cross-examination of Boggio on her statements to the prosecutor, the analysis of the consequence of these errors is the same as the errors as to Exhibits 1 and 2. The Hawai`i Supreme Court has held that we must consider whether the error was harmless beyond a reasonable doubt:
Even if the trial court erred in admitting evidence, a defendant's conviction will not be overturned if the error was harmless beyond a reasonable doubt.
[T]he error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction.
State v. Machado, 109 Hawai`i 445, 452-53, 127 P.3d 941, 948-49 (2006)(quoting State v. Heard, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981)); State v. Balisbisana, 83 Hawai`i 109, 116, 924 P.2d 1215, 1222 (1996) ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.").
[T]here will be no reversal where on the record as a whole, no prejudice to appellant has resulted. The decision depends upon the nature and quantum of proof deduced and the type of error committed. Where there is a wealth of overwhelming and compelling evidence tending to show the defendant guilty beyond a reasonable doubt, errors in the admission or exclusion of evidence are deemed harmless. State v. Rivera, 62 Haw. 120, 127-28, 612 P.2d 526, 531 (1980) (citations omitted).
To support a conviction of abuse of family or household members, the prosecution was required to prove that Carlut: (1) intentionally, knowingly, or recklessly, (2) physically abused, i.e., maltreated or injured, hurt or damaged, (3) a family or household member. Machado, 109 Hawai`i at 453, 127 P.3d at 949 (citations omitted).
A family or household member "means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit." See State v. Deleon, 72 Haw. 241, 242, 813 1382, 1383 (1991) (citation omitted). In assessing whether the evidence sufficiently supports a conviction under HRS § 709-906(1), the following additional guidance is also relevant:
[T]o "physically abuse" someone is to "maltreat in such a manner as to cause injury, hurt or damage to that person's body." State v. Nomura, 79 Hawai`i 413, 416, 903 P.2d 718, 721 (App.), cert. denied, 80 Hawai`i 187, 907 P.2d 773 (1995); State v. Ornellas, 79 Hawai`i 418, 421, 903 P.2d 723, 726 (App.), cert. denied, 80 Hawai`i 187, 907 P.2d 773 (1995). HRS § 709-906 does not designate the requisite state of mind attendant to the offense of physical abuse of a household member. Thus, "that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702-204 (1985). Cf. State v. Holbron, 78 Hawai`i 422, 424, 895 P.2d 173, 176 (1995) (requisite state of mind under HRS § 134-7(b) (Supp. 1992) unspecified, thus, it is intentionally, knowingly, or recklessly), reconsideration denied, 79 Hawai`i 424, 903 P.2d 729 (1995).
State v. Canady, 80 Hawaii 469, 474-75, 911 P.2d 104, 109-10 (App. 1996).
Therefore, completely disregarding Exhibits 1 and 2, and assuming that Boggio should have been subject to further cross-examination on her statements to the prosecutor, we consider the evidence that was presented to the jury. Boggio had been living with Carlut for almost two months when the incident took place. Carlut, as well as Boggio, testified at trial that Carlut slapped her with his right arm. Although Boggio could not remember at trial whether the slap was painful, both responding officers testified that they observed physical injuries to Boggio's face, and one of the officers testified that Boggio complained of pain as a result of her injuries. One of the officers testified at trial that he observed redness and swelling to the left side of Boggio's face and took three photographs, which were admitted into evidence at trial. Boggio testified, inter alia, that Carlut was the one who had caused her injuries. There was substantial opportunity to undermine Boggio's credibility on her statements to the police, including testimony that she had been drinking, examination of Boggio on various inconsistent statements, the trial testimony elicited from a former prosecutor (Donald Guzman) on Boggio's recanting of portions of her prior statement to the police, and examination of Boggio on her statements to a State investigator (Michael Greig), wherein she recanted portions of her statement to the police.
In light of this evidence and the record as a whole, even in the absence of Exhibits 1 and 2, and assuming arguendo that it was error to limit further cross-examination of Boggio on her statements to the prosecutor trying the case, there was overwhelming and compelling evidence supporting Carlut's conviction of the offense. The errors in admitting Exhibits 1 and 2, and any error in limiting cross-examination of Boggio, are therefore deemed harmless beyond a reasonable doubt.
We affirm the Family Court's Judgment of Conviction and Probation Sentence entered on September 2, 2005.
NOTES
[1] The Honorable Richard T. Bissen, Jr., presided.
[2] The Honorable Rhonda Loo presided over the hearing on this motion.
[3] HRE Rule 801 (Supp. 2004) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 802 (1993) provides that "Hearsay is not admissible except as provided by these rules. . ." HRE Rule 803(b)(2)(1993), which contains the excited utterance exception to the hearsay rule, provides:

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
[4] HRE Rule 802.1(1)(1993) provides, in relevant part (emphasis added):

The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
(1) Inconsistent statement. The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with rule 613(b), and the statement was:
(B) Reduced to writing and signed or otherwise adopted or approved by the declarant[.]
HRE Rule 613(b)(1993) states:
(b) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on direct or cross-examination, (1) the circumstances of the statement have been brought to the attention of the witness, and (2) the witness has been asked whether the witness made the statement.