**Electronically Filed
Supreme Court
SCWC-30502
28-MAR-2012
07:58 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

BLUE LEALAO, aka Boy Blue Lealao, Petitioner/Defendant-Appellant.

SCWC-30502

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 30502; CR. NO. 08-1-1341)

March 28, 2012

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, AND MCKENNA, JJ.

OPINION OF THE COURT BY ACOBA, J.

We hold that Hawai'i Rules of Evidence (HRE) Rule 409.5 (2007), which provides that evidence "express[ing] sympathy, commiseration, or condolences concerning the consequences of an event in which the declarant was a participant is not admissible to prove liability for any claim[,]" applies in civil but not in criminal cases. Accordingly, the circuit court of the first circuit (the court)[1] and the Intermediate Court of Appeals (the ICA) erred in applying HRE Rule 409.5 in this criminal case. Here, Petitioner/Defendant-Appellant Blue Lealao (Petitioner)

---

[1] The Honorable Michael A. Town presided.

remarked "I'm so sorry. I made a big mistake." The court erred in concluding that the admissibility of Petitioner's statement regarding having "made a big mistake," was governed by HRE Rule 409.5. The court also erred in excluding the preceding words, "I'm so sorry," because those words explained the context of the "mistake" comment. However, such error was harmless beyond a reasonable doubt in light of Petitioner's testimony in this case, in which he explained the statement that he made a big mistake and essentially expressed regret that the incident had taken place. Moreover, the statement "I'm so sorry. I made a big mistake" was relevant and admissible as a party admission under HRE Rule 803(a)(1) in this criminal case. Accordingly, Petitioner's April 20, 2010 amended judgment of conviction and sentence for Assault in the Second Degree, HRS § 707-711 (2011),[2] must be affirmed.

I.

In his Application for Writ of Certiorari (Application), Petitioner seeks review of the October 18, 2011 judgment of the ICA filed pursuant to its September 19, 2011 summary disposition order (SDO),[3] affirming the Petitioner's

---

[2] HRS § 707-711 states that (1) a person commits the offense of assault in the second degree if:

> (a) the person intentionally or knowingly causes substantial bodily injury to another; [or]
>
> (b) The person recklessly causes serious or substantial bodily injury to another;
>
> . . . .

[3] The SDO was filed by Chief Judge Craig H. Nakamura and Associate Judges Lawrence M. Reifurth and Lisa M. Ginoza.

2

conviction.  See State v. Lealao, No. 30502, 2011 WL 4357741, at *1 (App. Sept. 19, 2011) (SDO).  The following essential matters, some verbatim, are from the record and the submissions of the parties.

A.

On August 27, 2008, Respondent/Plaintiff-Appellee State of Hawaiʻi (Respondent) charged Petitioner with Assault in the First Degree, Hawaiʻi Revised Statutes (HRS) § 707-710 (1993).[4]  Prior to trial, on February 3, 2010, Petitioner filed a Motion in Limine (Motion) to exclude "[a]ny statements of condolences made by [Petitioner]" pursuant to HRE Rule 409.5 and State v. Canady, 80 Hawaiʻi 469, 911 P.2d 104 (App. 1996).  HRE Rule 409.5 (2008) provides:

> **Admissibility of expressions of sympathy and condolence**.  Evidence of statements or gestures that express sympathy, commiseration, or condolence concerning the consequences of an event in which the declarant was a participant is not admissible to prove liability for any claim growing out of the event.  This rule does not require the exclusion of an apology or other statement that acknowledges or implies fault even though contained in, or part of, any statement or gesture excludable under this rule.

(Emphases added.)

Just prior to the filing of the Motion, Respondent informed defense counsel that it intended to call Chelcey Pang Lealao (Chelcey) to testify at trial.  Chelcey is married to Petitioner's nephew, Bob, a.k.a. Kui, Lealao, Jr. (Kui),[5] and is

---

[4]     HRS § 707-710 states that "(1) a person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person."

[5]     On August 2, 2008, the date of the incident herein, Chelcey was Kui's girlfriend.  They were subsequently married.

also the niece of the complainant in this case, Emil Kruse III (Emil). Respondent informed Petitioner that Chelcey would testify at trial that she had a telephone conversation with Petitioner during which Petitioner said, "'I'm sorry, I apologize to you and your family. I'm sorry for what happened,'" and "'I made a mistake.'" The conversation took place over a year after the incident and approximately a week-and-a-half before trial.

On February 4, 2010, the court held a hearing on the Motion. Petitioner argued that although the statement was "obviously an admission[,]" HRE Rule 409.5 prohibits the admission of apologies unless the apology implies fault. Respondent maintained that, "it's so clear [the statement made by Petitioner] implies fault which is what . . . [HRE Rule] 409.5 allows" to be admitted into evidence--"an apology [that] . . . implies fault." Respondent noted, however, that "[t]he legislature's intent was more . . . for [HRE Rule 409.5] to be a civil . . . statute; was more [to] . . . not hinder healing ritual. . . . It appears [that] the legislature's intent was to allow individuals and an entity to express sympathy and condolences without the expressions being [used] to establish civil liability."

As to Canady, Petitioner argued that Canady prohibits the admission of an apology unless "accompanied with facts" indicating that the apology was an admission "to a fact at issue." Petitioner explained that otherwise, "you don't really know what [the defendant] is apologizing for. . . . It's like you can be sorry this situation happened; you can be sorry for a lot

of things."  The court apparently agreed that an apology could encompass different reasons:

> It's just common sense, [Respondent] said in [Canady]--it claimed the relevancy of the apology, if he did something to someone, you felt badly or felt it was wrong you do want to apologize. . . . [But if] no reason is given as to why [Petitioner] wanted to apologize[, t]he apology statement is bereft of a fact stated which would tie the apology to the violated conduct because [Petitioner] did not indicate what his apology was for.  His apology could relate to any number of circumstances.  Hence the meaning is open and ambiguous . . . [and] the apology would not amount to substantial evidence.

Respondent contended, however, that the instant case was distinguishable from Canady because "it's not speculative or ambiguous as to what in fact [Petitioner was] talking about.  It tie[d] the conduct as to exactly what [he was] talking about. . . . [I]t appear[ed] both the witness as well as [Petitioner] kn[ew] exactly what each other [was] talking about.  There is no ambiguity."  Petitioner countered, "There's no ambiguity as to what [] incident [] they[ were] talking about" but there is an ambiguity "as to what the mistake [was]."  [Id. at 21]

The court ruled at the close of the hearing that only that portion of Petitioner's statement regarding having "made a big mistake" was admissible.  The court appeared to view HRE Rule 409.5 as prohibiting the admission of "[e]vidence of statements or gestures that express sympathy, commiseration or condolences concerning the consequences of an event in which the declarant was a participant[,]" but as not requiring the "exclusion of an apology or other statement that acknowledges or implies fault even though contained in part" of the apology.  The court reasoned that the phrase "I'm so sorry" was an expression of sympathy but that "I made a big mistake" was not:

> Okay, I'm going to allow in "I made a big mistake." That's all. <u>That's the only part of that that I am going to let in. The rest look [sic] like sympathy.</u> And I understand the position that may create a record for appeal, <u>but seems to me that's more than -- than sympathy, commiseration, or condolences in the context.</u>

(Emphases added.)  Defense counsel maintained that the entire statement was inadmissible:

> THE COURT:  If you want the whole thing in, you can probably get it in, [defense counsel], as part of an effort to simply apologize or commiserate, but that's -- that's the court's ruling. . . . You might want to get the whole thing in to show he's just trying to offer a human common sense apologies [sic] for the family upset, but I don't want to let that all in . . . unless you want it in.
>
> . . . .
> [DEFENSE COUNSEL]:  -- and that's the exact ruling [sic] why they don't let that kind of stuff in because <u>it could just be a healing statement</u>, you know, that's out there for that reason.  <u>So that is the exact reason . . . you don't piecemeal this thing</u>[.] . . .
> THE COURT:  -- Well, that's -- find me some more case law, but right now <u>he says, "I'm sorry for what happened" -- referencing this incident and that I might not let in, but he says, "I made a big mistake." -- To me, that's beyond just saying "I'm sorry for what happened.  My condolences." So that's the court's ruling and you have an issue for appeal.</u>

(Emphases added.)

### B.

At trial, the defense asserted that Petitioner struck Emil in defense of himself and his family.  Defense counsel stated during his opening statement as follows:

> When Emil [] got hit, he was angry, he was intoxicated, and he was getting out of control. <u>This is a case about [Petitioner] defending himself and his family</u>.
> . . . .
> At some point during [the argument between Emil and Virgil Tamayo (Virgil)], Emil is the first one to use physical force against Kui.  Emil takes Kui, tells Kui to get out of the way, and shoves him.
> . . . .
> There's going to be some differences in testimony, but the end result is, is that when the dust settles and the smoke clears, is that Emil has a busted-up jaw, [Petitioner] has a busted-up nose and a laceration to his lip.
> . . . .
> Although it won't be clear exactly the sequences and how everything happened, one thing that will be clear, it was Emil who was the one who was angry, Emil was the one who was upset, who was out of control, and it was Emil who was

6

the first person to use physical force, and that was with a shove to Kui.

(Emphasis added.)

C.

The following relevant testimony was adduced at trial. Chelcey testified that a first birthday party was held for her son on August 2, 2008. At approximately 9:30 or 10:00 p.m., while standing in the reception hall, she observed her uncle Emil and neighbor Virgil arguing in the parking lot, which was approximately 30 to 35 feet from the reception hall. Emil and Virgil were shouting and cursing at one another loudly.

Chelcey stated that as she was standing near the door of the hall, Petitioner walked past her to the parking lot and struck Emil. Emil fell to the ground. While others called "911," Chelcey ran to the parking lot, and when she approached Emil, she noticed "[b]lood coming from the back of [Emil's] head." Chelcey believed Emil was unconscious for approximately twenty minutes. According to Chelcey, Emil did not see Petitioner walking toward him before Petitioner struck him.

Kui testified that he was standing near the parking lot when he observed Emil and Virgil arguing. As he attempted to "split [Emil and Virgil] apart," Emil "pushed [him] off" and said "get off me." Kui "had to step back" as a result but did not "fall[] to the ground." Because he could tell Emil "was mad," Kui "backed off." Kui stated that he did not call out for help.

Kui then moved aside, approximately twelve feet away from Emil and Virgil. Emil and Virgil continued to argue for "a

minute or so" and Kui saw Emil get "hit on his side" by his uncle, Petitioner.  Emil fell to the ground.  Kui approached Petitioner and pushed him because he was "mad at [him]."

Virgil testified that he and Emil got into a "disagreement" in the parking lot.  He related that it was "[j]ust [a] verbal" disagreement and did not get physical at any point.  After the disagreement had ended, Virgil saw a "figure" walk towards Emil.  Virgil finished his conversation with Emil and turned away from Emil, and when Virgil turned back, he saw Emil on the ground.  Virgil did not see the face of the person who approached Emil.

Emil's brother Erik Kruse (Erik) was also a guest at the party.  Toward the end of the party, Erik's girlfriend told him that Emil was arguing with another person in the parking lot. Erik testified that he went to the parking lot and saw Emil and Virgil arguing.  Kui approached and told Emil, "[D]on't uncle[,]" "it's my son's party[.]"  In response, Emil told Kui, "Brah, this nothing [sic] to do with you, mind your own business."  When Kui attempted to intervene, Emil "escorted" Kui to the side; there was "no shove, no nothing."  "He just [] held him to the side, like, . . . 'it's not your problem.'"  Kui did not fall to the ground or stumble as a result.  As Emil and Virgil continued to argue, Petitioner walked up to Emil and "whack[ed] him in the face[.]"  Immediately thereafter, Erik heard Kui say, "No uncle, no.  Why?"  Emil was "out cold," "convulsing" and "blood was coming out of his head."  According to Erik, Emil was "out cold . . . for awhile."

8

Emil testified that he and Virgil were in a confrontation because Emil's son, Chauncey, and Virgil's son, Tyler, had been in an argument about a girl. Emil and Virgil began arguing because Emil confronted Tyler and Virgil intervened. Emil stated that the confrontation was merely verbal and not physical. According to Emil, he and Virgil did not challenge each other to a fight, but Emil admitted that the conversation was "heated." Emil remembered Kui arriving at the scene but did not recall Kui breaking up the argument, nor did Emil remember shoving Kui.

Petitioner testified that he heard a great deal of yelling coming from the parking lot. When he looked towards the parking lot, he saw his nephew, Kui, and other people he did not know. Some of them were yelling and one individual was "jumping up and down." Since Kui was standing between Emil and Virgil, Petitioner walked to the parking lot because he was concerned about Kui's safety. Petitioner reported that Kui was four to five feet from Emil when Emil shoved Kui. After Petitioner saw Emil shove Kui, Emil and Virgil continued to argue for another minute or so when Petitioner struck Emil.

D.

At trial, both Chelcey and Petitioner testified regarding the conversation that was the subject of the Motion. Chelcey stated that approximately "a week-and-a-half" prior to trial, she received a telephone call from Petitioner. She reported that during the conversation, the subject incident came up and Petitioner indicated that he had made a big mistake:

9

> Q:  And during this conversation, [Petitioner] –
> correct me if I'm wrong – indicated to you that he had made
> a big mistake?"
> A:  Correct.
> Q:  He said this approximately four times?
> A:  Yes.

Petitioner testified that prior to trial, his girlfriend called Chelcey and Kui's residence because Petitioner wanted to speak with Kui about assisting him in finding a job. He admitted that when the incident came up in the conversation, he told Chelcey that he "'made a big mistake.'"  When asked what he meant by this Petitioner responded, "What I mean by I made a mistake is that I made a mistake by, you know, punch [her] uncle, stuff like that.  I didn't mean anything else besides that.  I mean, what I mean by I made a mistake, by doing that to the party and stuff like that.  I didn't mean anything."  He further explained, "I made a mistake by doing that to [her] uncle.  I didn't mean to do that.  Everybody was make [sic] a mistake over there, not only me point finger at [sic]."  Petitioner affirmed that he "didn't mean to hurt [Chelcey's] uncle[.]"

E.

On February 11, 2010, the jury found Petitioner guilty of the included offense of Assault in the Second Degree, HRS § 707-711.  An Amended Judgment of Conviction and Sentence was entered on April 20, 2010, adjudging Petitioner guilty and sentencing him to five years of imprisonment, with credit for time served.

II.

Petitioner filed his Notice of Appeal on May 19, 2010. Pertinent to his Application, on appeal to the ICA, Petitioner

10

challenged the court's ruling with respect to the statements, "I'm so sorry.  I made a big mistake."[6]  [Opening Brief (OB) at 17-19]  The ICA determined that the court did not err in admitting Petitioner's statement that he "'made a big mistake'" into evidence.  Lealao, 2011 WL 4357741, at *2.  First, the ICA reasoned that the statement "was relevant and admissible as probative evidence of his consciousness of guilt and that his use of force was not justified[,]" noting that "[i]t was for the jury to decide what weight to give to this evidence."  Id.

Second, the ICA held that Petitioner's reliance on Canady was misplaced.  The ICA viewed Canady as deciding that the defendant's apology to the complainant in that case was insufficient to support his conviction for abuse of a family or household member.  Id. at *3 (citing Canady, 80 Hawaiʻi at 475, 911 P.2d at 110)  But, according to the ICA, "evidence may be relevant and admissible without being sufficient to establish a material element of a charged offense."  Id. (citing State v. Wallace, 80 Hawaiʻi 382, 409-10, 910 P.2d 695, 722-23 (1996)).

The ICA also noted that the court relied on HRE Rule 409.5 in ruling that only the portion of Petitioner's statement regarding having "made a big mistake" was admissible.  The ICA

---

    [6]    In his Opening Brief, Petitioner also presented three other issues not raised in his Application:

        1.    The district [sic] court erred in disallowing [Petitioner]'s request for a mutual affray instruction.
        2.    There was insufficient evidence to support the jury's verdict.
        3.    [Petitioner]'s conviction should be vacated because he received ineffective assistance of counsel.

11

acknowledged in a footnote that "[i]t is not clear that HRE Rule 409.5 applies to criminal cases[,]" since the rule and its commentary "indicate that the rule may be directed at the admissibility of evidence in civil cases." Id. at *3 n.4. Nevertheless, the ICA stated, "For purposes of our analysis in this case, we assume[,] without deciding[,] that HRE Rule 409.5 is applicable." Id.

### III.

Petitioner lists the following question in his Application: "Whether the ICA gravely erred when it held that the [court] properly admitted [Petitioner's] pretrial statement to a relative that he had 'made a big mistake.'" Respondent filed a Response to Petitioner's Application on January 31, 2012 (Response).

### IV.

### A.

In connection with the question raised in his Application, Petitioner argues that the ICA incorrectly concluded the "made a mistake" statement was admissible because (1) the statement was not relevant, (2) even if it was relevant, the statement was not admissible as a party admission, and (3) the court's ruling admitting the statement was not harmless beyond a reasonable doubt.

First, Petitioner asserts that the statement was not relevant to "whether he intentionally, knowingly, or recklessly caused serious bodily injury to another" or to whether he had a "consciousness of guilt" because the statement "I made a big

12

mistake" "can have many meanings[,]" (citing <u>Canady</u>, 80 Hawai'i at 469, 911 P.2d at 104), and the statement was too remote in being made "over a year after the alleged incident." He maintains that because his statement was not relevant, the question of whether the statement was a party admission under HRE Rule 803(a)(1) (2010),[7] that "is not excluded by the hearsay rule, [HRE Rule 802 (2010),[8]]" need not be considered.

Second, Petitioner contends that, assuming the subject statement was relevant, it was not a party admission under HRE Rule 803(a)(1) because "'it [was] not evident . . . that the apology was an admission to a criminal act[,]'" or tied to "violative conduct." (Quoting <u>Canady</u>, 80 Hawai'i at 475, 911 P.2d at 110.)

Third, Petitioner contends the court's error in admitting the statement was not harmless beyond a reasonable doubt because the statement was of a "confessional nature" and such "damning evidence" that there is a reasonable possibility its admission contributed to his conviction.

### B.

In its Response, Respondent notes as to Petitioner's first argument that "'[a]ll relevant evidence is admissible[.]'" (Quoting HRE Rule 402 (2010).) According to Respondent, a jury

---

[7]    HRE Rule 803(a)(1) provides that a party admission is "[a] statement that is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity, or (B) a statement of which the party has manifested the party's adoption or belief in its truth."

[8]    HRE Rule 802 provides that "[h]earsay is not admissible except as provided by [the HRE], or by other rules prescribed by the Hawai'i supreme court, or by statute."

could have determined that Petitioner said he "made a big mistake" because he hurt Chelcey's uncle, Emil; erred in believing that punching Emil was necessary to protect himself or his family; or intended to "garner Chelcey's sympathy" prior to trial.  But, Respondent urges that the fact Petitioner's statement may have many meanings does not render it inadmissible.  Respondent points out that Petitioner does not contest "a possible meaning attributable to his statement was that he acknowledged being at fault."

        As to Petitioner's second argument, Respondent argues the "record makes clear that Petitioner intended his statement to relate to the assault for which he stood trial."  As to Petitioner's third argument, Respondent contends that even if the court erred in admitting the statement, such error was harmless because the record demonstrates that Petitioner was not acting in self defense.  Also, Petitioner could not have been justified in punching Emil "purportedly to protect Kui" because Kui had no "cause to use force against [Emil.]"  (Citing State v. Mark, 123 Hawaiʻi 205, 221-31, 231 P.3d 478, 494-504 (2010)).

V.

A.

        Petitioner maintained throughout the proceedings that the statement "I'm so sorry, I made a big mistake" was inadmissible.  As indicated, while excluding "I'm so sorry," the court determined that "'I made a big mistake'" appeared to be "more than . . . sympathy, commiseration, or condolences in the context" and thus admitted that portion of Petitioner's

14

statement.  It appears that the court was relying on HRE Rule 409.5 inasmuch as its ruling was couched in the language of that rule.  See HRE 409.5 (providing that evidence of expressions of "sympathy, commiseration, or condolence" are inadmissible but that "exclusion of an apology or other statement that acknowledges or implies fault even though contained in, or part of, any statement or gesture" are not excludable under the rule).

However, the plain language of HRE Rule 409.5 excludes expressions of sympathy, commiseration, or condolence "to prove liability," as opposed to proving a defendant's guilt.  (Emphasis added.)  Therefore, the text of HRE Rule 409.5 itself suggests that the rule was not intended to apply in a criminal context. The commentary, like the plain language of HRE Rule 409.5, does not mention criminal proceedings.  The commentary explains that the rule "favors expressions of sympathy as embodying desirable social interactions and contributing to civil settlements, and the evidentiary exclusion recognizes that the law should 'facilitate or, at least, not hinder the possibility of this healing ritual.'"  (Quoting Jennifer K. Robbennolt, Apologies and Legal Settlement:  An Empirical Examination, 102 Mich. L. Rev. 460, 474 (2003).)  (Emphasis added.)

Also, the commentary notes that HRE Rule 409.5 "resembles measures recently adopted in several sister states[,]" citing as an example, California Evidence Code section 1160, which confines its application to the civil context.  See Cal. Evid. Code 1160(a) (West 2011) (providing that any "portion of statements, writings, or benevolent gestures expressing sympathy

15

or a general sense of benevolence relating to the pain, suffering, or death of a person involved in an accident and made to that person or to the family of that person <u>shall be inadmissible</u> as evidence of an admission of liability <u>in a civil action</u>") (emphases added).[9]

In addition, the legislative history confirms that HRE Rule 409.5 applies only in civil actions. The original purpose of the measure proposed to the legislature was "to make benevolent gestures inadmissible as evidence of an admission of liability in medical malpractice claims." S. Stand. Comm. Rep. No. 1131, in 2007 Senate Journal, at 1535. However, the

---

[9] Similar rules in other states apply in civil actions. <u>See also</u> 10 Delaware Code § 4318 (providing that "[a]ny and all statements, writings, gestures, or affirmations made by a health care provider or an employee of a health care provider that express apology . . ., sympathy, compassion, condolence, or benevolence . . . are <u>inadmissible in a civil action</u> that is brought against a health care provider") (emphasis added); Iowa Code § 9-207 (providing that, "[i]n any civil action</u> brought by or on behalf of a patient who experiences an unanticipated outcome of medical care, . . . all statements and affirmations . . . and all gestures or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence, . . . shall be inadmissible as evidence") (emphasis added); Michigan Compiled Laws Annotated § 600.2155 (providing that "[a] statement, writing, or action that expresses sympathy, compassion, commiseration, or a general sense of benevolence relating to the pain, suffering, or death of an individual and that is made to that individual or to the individual's family is inadmissible as evidence . . . in an <u>action for medical malpractice</u>") (emphasis added); Nebraska Revised Statutes § 27-1201 (providing that "[i]n any civil action</u> brought by an alleged victim of an unanticipated outcome of medical care, or in any arbitration proceeding related to such civil action, any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence" that "are made by a health care provider or an employee of a health care provider to the alleged victim, a relative of the alleged victim, or a representative of the alleged victim . . . shall be admissible") (emphasis added); Tennessee Rules of Evidence Rule 409.1 (providing that the "portion of statements, writings, or benevolent gestures expressing sympathy or a general sense of benevolence relating to the pain, suffering or death of a person involved in an accident" that are "made to such person or to the family of such person shall be inadmissible as evidence of an admission of liability <u>in a civil action</u>") (emphasis added); Vernon's Annotated Missouri Statutes § 538.229 (providing that "[t]he portion of statements, writings, or benevolent gestures expressing sympathy or a general sense of benevolence relating to the pain, suffering, or death of a person and made to that person or to the family of that person shall be inadmissible as evidence of an admission of liability <u>in a civil action</u>") (emphasis added).

legislature "found it appropriate to allow individuals and entities to express sympathy and condolence without the expression being used against the individual or entity <u>to establish civil liability</u>, even if the individual or entity is not a health care provider." <u>Id.</u> (emphasis added). Thus, the legislative committee deleted the provisions "confin[ing] the bill to civil actions against health care providers, and benevolent gestures made to a patient or patient's family," and made the rule applicable in all civil actions. <u>Id.</u>

Addison M. Bowman explains that HRE Rule 409.5 "was enacted by the 2007 Hawaiʻi Legislature with broad support," including from the health-care industry, which views an expression of sympathy as "'an important element in the healing process.'" <u>Manual on the Hawaiʻi Rules of Evidence</u> (hereinafter, "HRE Manual") § 409.5-1 (Supp. 2011) (quoting Jonathan Todres, <u>Toward Healing and Restoration for All: Refraining Medical Malpractice Reform,</u> 39 Conn. L. Rev. 667, 710 (2006)). Such "expressions of sympathy . . . may contribute to <u>civil settlements</u>." HRE Manual § 409.5-1 (citing Commentary to HRE Rule 409.5) (emphasis added).

It is clear from the plain language of HRE Rule 409.5, its commentary, and its legislative history that the rule does not preclude the admission of expressions of "sympathy, commiseration, or condolence" in criminal cases, and the court erred in assuming that it did. To the extent the ICA concluded that it was within the court's discretion to exclude the "I'm so sorry" portion of Petitioner's statement, but admit the "I made a

17

big mistake" portion, based on the "assum[ption]" that HRE Rule 409.5 is applicable" in criminal cases, Lealao, No. 30502, 2011 WL 4357741, at *3, the ICA gravely erred.

B.

The court may have also relied on Canady in excluding the "I'm so sorry" portion of Petitioner's statement, as evidenced by the court's acknowledgment that an apology can have many meanings. In Canady, the ICA considered whether there was substantial evidence to support the defendant's conviction for abuse of a family or household member. See Canady, 80 Hawai'i 469, 474, 911 P.2d at 109. Among other evidence, the State relied upon the defendant's statement that he wanted to go to the emergency room to apologize to his girlfriend. Id. at 475, 911 P.2d at 110.

Canady rejected the State's assertion that the defendant's attempted "apology" constituted substantial evidence to support the defendant's conviction. See id. Canady concluded that, because "no reason [was] given as to why [the d]efendant wanted to apologize[,]" the "'apology' could [have] relate[d] to any number of circumstances" and its meaning was "open to speculation." Id. The apology was "bereft of . . . facts" that "would tie the apology to the violative conduct" with which the defendant had been charged, and it was not evident the apology "constitute[d] an admission that [the d]efendant committed the alleged crime" or a "criminal act." Id. Thus, Canady decided that the apology did not amount to substantial evidence

18

supporting the defendant's conviction for abuse of a family or household member.  Id.

Petitioner reads Canady as prohibiting the admission of an apology unless it is clear the apology constituted an admission of a "criminal act" or the "violative conduct" for which the defendant is charged.  But, as noted by the ICA, Canady is not a case regarding the admissibility of evidence.  Rather, Canady was concerned with whether, under the facts of that case, the defendant's attempt to apologize constituted substantial evidence of the offense for which the defendant was convicted.

It may be noted that Canady is also factually distinguishable inasmuch as Petitioner stated that he had "made a big mistake," and therefore arguably, Petitioner's statement was unlike the bare apology in Canady.  In any event, as discussed, the ICA was correct that "evidence may be relevant and admissible without being sufficient to establish a material element of a charged offense."  Lealao, 2011 WL 4357741, at *3.

C.

As elucidated by the foregoing, neither HRE Rule 409.5 nor Canady required exclusion of the "I'm so sorry" portion of Petitioner's statement in this case.  As to the admitted portion, "I made a big mistake," that statement is susceptible to various interpretations.  It did not necessarily mean that Petitioner was admitting fault for the charged conduct.  By admitting only the portion of Petitioner's statement regarding having "made a big mistake," but excluding that portion regarding Petitioner being

19

"sorry," the jury was left without the context in which the statement had been made.

As a result, the jury may have been more inclined to interpret the statement as Petitioner admitting to fault as opposed to an apology based simply on the fact that the incident occurred. Therefore, under the circumstances, the entire statement should have been admitted because, otherwise, the words "I made a big mistake" alone might be misleading. See State v. Tucker, 10 Haw. App. 43, 67-68, 861 P.2d 24, 35 (1993) (concluding that the statement became "powerfully incriminating" in "the evidentiary context in which [they were] presented to the jury" and, thus, "should not have been admitted into evidence in the form presented to the jury") (internal quotation marks omitted).

D.

Petitioner did not ask for the phrase "I'm so sorry" to be admitted. Nor did Petitioner advance any argument at the hearing on the Motion, prior to trial, at trial, or on appeal, that the court's exclusion of only "I'm so sorry" prejudiced him in any way. Consequently, any theory relating to the court's separation of Petitioner's statement may be said to be waived. See State v. Moses, 102 Hawaiʻi 449, 456, 77 P.3d 940, 947 (2004) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]")

In any event, even if Petitioner had argued that the court's exclusion of the "I'm so sorry" portion of his statement

was prejudicial or had the possibility of misleading the jury, such error would be harmless beyond a reasonable doubt in light of the fact that Petitioner himself explained his statement "I made a big mistake" to the jury. Petitioner told the jury that he "made a mistake by . . . punch[ing Emil]" and "doing that to the party." He further stated, "I made a mistake by doing that to [Chelcey's] uncle. I didn't mean to do that. Everybody was [sic] make a mistake over there, not only me point finger at [sic]"; "I didn't mean to hurt [her] uncle[.]"

Hence, Petitioner's testimony offered the jury an explanation for the statement that essentially conveyed his regret that the incident occurred. It was for the jury to believe Petitioner or not. The jury's rejection of Petitioner's explanation for his statement is reflected in its verdict. See State v. Gabrillo, 10 Haw. App. 448, 877 P.2d 891 (1994) (concluding that "the verdict represented the jury's determination that [the d]efendant's evidence was not believed, i.e., it did not raise any reasonable doubts of [the d]efendant's guilt and, on the other hand, that the State's witnesses were believed"). In light of the foregoing, there is no reasonable possibility that the exclusion of the phrase "I'm so sorry" contributed to Petitioner's conviction. Accordingly, the court's error in excluding part of Petitioner's statement was harmless beyond a reasonable doubt.

VI.

A.

As indicated, Petitioner's first contention is that the

21

FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

statement he made to Chelcey was not relevant to any material fact in this case. The ICA determined the statement was probative in establishing that Petitioner's use of force was not justified. HRE Rule 401 (1993) provides that "[r]elevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In the instant case, Petitioner defended against the charge by arguing that his conduct was justified because he believed punching Emil was necessary to protect himself and Kui. Self-defense and defense of others are not affirmative defenses, and, thus, Respondent had the burden of disproving the defense beyond a reasonable doubt. See State v. Culkin, 97 Hawai'i 206, 215, 35 P.3d 233, 242 (2001) (stating that "[s]elf-defense is not an affirmative defense, and the prosecution has the burden of disproving it [beyond a reasonable doubt] once evidence of justification has been adduced").

Self defense, HRS § 703-304 (2001),[10] or defense of others, HRS § 703-305 (1993),[11] depends on the actor's belief

---

[10] HRS § 703-304 provides that "the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion. (Emphasis added.)

[11] HRS § 703-305 states that the use of force upon or toward a person is justifiable to protect a third person when

   (a)   Under the circumstances as the actor believes them to
         be, the person whom the actor seeks to protect would
         be justified in using such protective force; and
   (b)   The actor believes that the actor's intervention is
         necessary for the protection of the other person.

22

that the use of force was necessary either to protect oneself or another. A defendant's credibility, then, is at the crux of those defenses--the jury must determine whether the defendant did in fact subjectively believe the use of force was necessary. See State v. Walsh, 125 Hawaiʻi 271, 299, 260 P.3d 350, 378 (2011) (stating that "[the defendant's] credibility was at the crux of [the defendant's self-]defense" because "the jury is to decide whether the defendant was truthful about his subjective belief of the circumstances" surrounding his or her use of force).

In the instant case, Petitioner does not deny having struck Emil. Rather, he asserts that he did so because he believed it was necessary to protect himself and Kui. Petitioner's statement would have the "tendency to make the existence of [a] fact that [was] of consequence to the determination of the action[,]" here, Petitioner's belief that his use of force was necessary to protect himself or Kui, "more probable or less probable than it would be without the evidence." HRE Rule 401.[12]

In light of the statement, the jury could have determined that Petitioner did not reasonably believe his use of force against Emil was necessary. In other words, Petitioner may

---

(Emphases added.)

[12] Under some circumstances, an expression of sympathy or condolence may not be relevant to establishing a material fact at issue in a criminal case. In other instances, there may not be evidence establishing that a particular statement related to the incident giving rise to a criminal charge. Here, because Petitioner did not dispute that the statement "I'm so sorry, I made a big mistake" related to the August 2, 2008 incident, and in light of the defense raised by Petitioner in this case, the statement was relevant to a material fact at issue in the action.

not have admitted to making a "mistake" if he truly believed he had been justified in striking Emil, thereby making his claim of self-defense less tenable.  See Wallace v. State, 932 S.W.2d 345, 346-47 (Ark. App. 1996) (holding that evidence that "three weeks before the trial, [the defendant] had approached the victim at the same store where the robbery occurred, apologized to him, asked him to 'go pretty easy on them,' and . . . offered to 'pay [the victim] some of his money back'" was relevant to show "knowledge of [the defendant's] guilt").  Hence, Petitioner's statement was relevant in that it made Petitioner's assertion that he believed the use of force was necessary more or less probable than it would be without the statement.

B.

Petitioner also maintains the statement was not relevant because it could "have many meanings" and, also, because it was made over a year after the incident occurred.  Petitioner cites to no authority for the foregoing assertions.  HRE Rule 402 requires only that evidence have "any tendency to make the existence of <u>any fact</u> that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  (Emphasis added.)  Here, the statement was relevant in evaluating Petitioner's asserted belief that his use of force was justified.  Once admitted into evidence, it was for the jury to decide what effect to give the statement.

VII.

Petitioner's second contention is that even if the evidence was relevant, it did not constitute a party admission,

24

under HRE Rule 803(a)(1) because "'it [was] not evident . . . that the apology was an admission to a criminal act.'" (Quoting Canady, 80 Hawaiʻi at 475, 911 P.2d at 110.) HRE Rule 803 provides that party admissions "are not excluded by the hearsay rule." As indicated, a party admission is a statement made by a party and offered against the party. HRE Rule 803(a)(1).

Petitioner is mistaken that a party admission must be an admission to a criminal act to be admissible. The HRE Manual explains that "[t]he word 'admission' is a term of art embracing any statement made or adopted by or fairly attributable to a party[.]" HRE Manual § 803-2. "The extrajudicial statements of a party-opponent, when offered against the same, are universally deemed admissible at trial as substantive evidence of the fact or facts stated." Kekua v. Kaiser Found. Hosp., 61 Haw. 208, 217 n.3, 601 P.2d 364, 371 n.3 (1979). As the commentary to HRE Rule 803(a) explains, in order to admit a statement as a party admission, the statement need only be (1) "relevant," (2) "made by a party to the litigation," and (3) "offered against that party.'" "[T]here is no requirement that an admission 'admit' anything or convey information against the interest of the declarant." HRE Manual § 803-2; see also State v. Espiritu, 117 Hawaiʻi 127, 132-33, 176 P.3d 885, 890-91 (2008).

In Espiritu, the defendant challenged his conviction for, inter alia, attempted murder in the second degree. Id. at 129, 176 P.3d at 887. The defendant allegedly shot the complainant, with whom he had had a "dating" or "sexual relationship," after finding her with another male. Id. at 130,

25

176 P.3d at 888. Among other things, Petitioner challenged the admissibility of text messages he had sent to the complainant. Id. The complainant testified that she received the following text messages from the defendant: (1) "'The true face shows, I guess, all the brothers and sisters were right'"; (2) "'You should have talked to me, but you're too pig-headed for our kind. There's a new message going out to the locals'"; (3) "I'm tired of being the sucker. What goes around comes around"; and (4) "I have to say I'm so, so sorry." Id. at 131-32, 176 P.3d at 889-90 (brackets omitted).

Espiritu noted the defendant had conceded that the actual text messages as opposed to Petitioner's testimony "would arguably be admissible as an exception to the hearsay rule as an admission by a party-opponent under HRE [Rule] 803(a)(1)." Id. at 132, 176 P.3d at 890. We concluded that the text messages did "qualify as statements offered by [the State] against [the defendant] to show [the defendant's] history of threats against the [c]omplainant and, hence, were admissions by a party-opponent under HRE Rule 803(a)(1)." Id. at 133, 176 P.3d at 891. Espiritu noted that "[t]he HRE Rule 803(a)(1) exception for party admissions does not require that the statement be against interest when made." Id. at 133 n.5, 176 P.3d at 891 n.5; see also Kekua, 61 Haw. at 216 n.3, 601 P.2d at 370 n.3 (in distinguishing "'party admissions[]'" from "'statements against interest[,]'" noting that "the latter is considered to be an exception to the hearsay rule and therefore admissible under

26

certain circumstances[;] the modern view treats party admissions as being outside the scope of the exclusionary rule").

As previously discussed, the statement at issue in this case was relevant. As in Espiritu, the statement "I'm so sorry, I made a big mistake" "qualif[ied] as statements offered by [Respondent] against [Petitioner]" to negate Petitioner's claim that he believed his use of force was justified "and, hence, were admissions by a party-opponent under HRE Rule 803(a)(1)," 117 Hawaiʻi at 133, 176 P.3d at 891, and admissible.[13]

## VIII.

Based on the foregoing, Petitioner's April 20, 2010 Amended Judgment of Conviction and Sentence and the October 18, 2011 ICA Judgment are affirmed on the grounds stated herein.

On the briefs:

Lars Robert Isaacson,
for petitioner/
defendant-appellant.

Keith M. Kaneshiro,
Prosecuting Attorney,
and Donn Fudo, Deputy
Prosecuting Attorney,
for respondent/
plaintiff-appellee.

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Simeon R. Acoba, Jr.

/s/ James E. Duffy, Jr.

/s/ Sabrina S. McKenna



---

[13] Because Petitioner's statement was both relevant and admissible as a party admission, Petitioner's third contention, that the court's error in admitting the statement was not harmless beyond a reasonable doubt, need not be addressed.

27